_____ FILED        _____ ENTERED
_____ LODGED       _____ RECEIVED

MAY 07 2009      RE

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                              DEPUTY

**09-CV-00637-CMP**

*Summons issued SEA 26023*

## IN THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| RANDY'S RING & PINION SERVICE INC., | Civil Action No. **C09-0637** TSZ |
| Plaintiff, | COMPLAINT FOR ANTITRUST VIOLATIONS AND DECLARATORY JUDGMENT OF PATENT NONINFRINGEMENT |
| v. | |
| EATON CORPORATION, | |
| Defendant. | JURY DEMANDED |

Plaintiff Randy's Ring & Pinion ("RR&P") brings this complaint against defendant Eaton Corporation ("Eaton") and alleges as follows:

### NATURE OF ACTION

1.      This is an action for damages and injunctive relief arising out of Eaton's violations of federal and state antitrust laws.

2.      Eaton is in the business of manufacturing Performance Differentials for trucks and automobiles for original equipment manufacturing ("OEM") use, and for the aftermarket. Eaton has acquired substantial market power in the markets for the sale of aftermarket Performance Differentials.

COMPLAINT - 1
Civil Action No.
RRPI-6-1001P01CMP

**BLACK LOWE & GRAHAM** PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

3.      Eaton has used, and continues to use, its power in this market to enter into contracts, combinations, and/or conspiracies with others to restrain trade in the Performance Differentials aftermarket. For example, Eaton has entered into agreements with its distributors that prohibit those distributors from purchasing competing products, manufacturing competing products, having competing products made for them, and otherwise engaging in other competitive activities.

4.      For many years, RR&P was a distributor of Eaton's aftermarket differential products. As an Eaton distributor, RR&P purchased from Eaton and sold to others a significant quantity of differential products. RR&P later began developing some of its own differential products and selling those products in competition with the Eaton products. Eaton took notice of the RR&P competition, and asked RR&P and its other distributors to sign a distribution agreement that prohibited the distributors from developing new products that compete with Eaton products. RR&P refused to sign the agreement, and Eaton responded by refusing to sell any further products to RR&P as a result.

5.      Eaton has acquired and maintained monopoly power in the Performance Differentials aftermarket through exclusionary and anticompetitive means. Eaton has attempted to monopolize the Performance Differentials aftermarket through its unlawful distributor agreements and other practices.

6.      RR&P is in the business of developing and selling aftermarket Performance Differentials that compete directly with Eaton in the aftermarket differential market. Eaton has stifled the aftermarket differential market by, among other things, requiring resellers to sign agreements that preclude them from developing competitive products or dealing with competing manufacturers and otherwise creating barriers to entry into the Performance Differentials aftermarket.

COMPLAINT- 2
Civil Action No.
RRPI-6-1001P01CMP

BLACK LOWE & GRAHAM ᴾᴸᴸᶜ
701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

7.     Eaton's conduct violates the Sherman Act, the Clayton Act and the laws of the State of Washington. RR&P has been, and continues to be, harmed by Eaton's anticompetitive practices and seeks treble damages and injunctive relief.

## JURISDICTION AND VENUE

8.     This complaint is filed under Section 16 of the Clayton Act, 15 U.S.C. § 26; to, among other things: prevent and restrain violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, *et. seq.*; prevent and restrain violations of Section 3 of the Clayton Act, 15 U.S.C. § 14, *et. seq.*; and for damages under Section 4 of the Clayton Act, 15 U.S.C. § 15.

9.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337. This Court has supplemental jurisdiction over the state law claims alleged herein under 28 U.S.C. § 1367. The federal and state law claims alleged in this action arise from a common nucleus of operative facts.

10.     This Court has personal jurisdiction over Eaton because Eaton has systematic and continuous contacts with Washington through its sale of differential products in Washington and the operation of its own business offices in this judicial district. In addition, the acts complained of have had, and will have, substantial anticompetitive effects in this judicial district.

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 and 15 U.S.C. §§ 15, 22 and 26 in that Eaton is found in this judicial district, transacts business in this district, and the acts complained of have had, and will have, substantial anticompetitive effects in this district.

## THE PARTIES

12.     Plaintiff RR&P is a Washington corporation with its principal place of business in Everett, Washington. RR&P is engaged in the supply and manufacturing of, among other things, automobile parts including ring & pinions, axles, installation kits, third members, race and differential small parts, lockers, and positractions. As it pertains to this action, like Eaton, RR&P

COMPLAINT- 3
Civil Action No.
RRPI-6-1001P01CMP

BLACK LOWE & GRAHAM ᴾᴸᴸᶜ
701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

is in the business of designing, manufacturing, distributing, and marketing aftermarket Performance Differentials.

13.     Defendant Eaton Corporation is a Delaware corporation with its principal place of business in Cleveland, Ohio. Eaton is a large, multi-national corporation with 2008 sales of about $15 billion. Like RR&P, Eaton is in the business of designing, manufacturing, and marketing aftermarket Performance Differentials. Eaton maintains regular places of business throughout the country, including within this judicial district.

## BACKGROUND & RELEVANT FACTS

14.     A differential is a device that allows each of the driving wheels on a vehicle to rotate at different speeds while supplying equal torque. One disadvantage of a standard differential is that under low traction conditions it can reduce overall torque delivered to the driving wheels. As a result, torque controlling Performance Differentials have been developed to overcome this disadvantage, namely, Limited Slip Differentials (aka "LSD's" or "Posi's") and Locking Differentials (aka "Lockers") (collectively, "Performance Differentials"). Limited Slip Differentials allow for some difference in rotational velocity of the axle shafts, but do not allow the difference in speed to exceed a preset amount. Locking Performance Differentials provide increased traction by disallowing wheel speed differentiation under certain conditions. New vehicles typically come equipped with standard differentials, although certain new model automobiles and performance vehicles (sports cars and SUVs) may come with a Performance Differential. Most Performance Differentials are sold on the aftermarket, meaning that they are sold to individuals who want to modify their vehicles from their originally manufactured configuration.

15.     RR&P designs, manufactures and distributes its own line of aftermarket Performance Differentials. RR&P began designing simple component parts, and has now developed the capability and expertise to design, develop and manufacture Performance

BLACK LOWE & GRAHAM ᴾˡˡᶜ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

COMPLAINT- 4
Civil Action No.
RRPI-6-1001P01CMP

Differentials of its own. These Performance Differentials are sold under different brands, including YUKON DURA GRIP® and others. While these products may be sold at lower price points, they are typically designed and developed to meet the demands of customers seeking higher quality products (i.e., more robust parts and quieter operation) at competitive prices.

16.     In early 2006, RR&P introduced YUKON DURA GRIP® brand Performance Differentials that are directly competitive to Eaton's Performance Differentials (the "Competing Yukon Products"). Eaton sells its Performance Differentials directly to end users (meaning the vehicle owners or operators); to auto repair shops, auto parts stores, and similar outlets which then sell the products directly to end users; and to distributors who subsequently sell the products to repair shops, auto parts stores, and the like.

17.     Eaton is a large public company with 2008 sales of about $15 billion. Eaton describes itself as the "World's largest independent producer of torque controlling Performance Differentials for vehicle manufacturers, the automotive aftermarket and commercial and military vehicle manufacturers." Like RR&P, Eaton offers Performance Differentials; specifically, Eaton offers both Locking Differentials and Limited Slip Differentials.

18.     Eaton introduced the first Limited Slip Differential on General Motor vehicles under the name Positraction in 1961. Positraction ultimately achieved what Eaton describes as "icon status" and the term "Positraction" (or "Posi", now referred to as the "Eaton Posi") is now a generic term used to refer to Limited Slip Differentials. Once the Eaton Posi was no longer subject to patent protection, aftermarket providers began developing generic products to compete with Eaton.

19.     On August 27, 2005, Eaton completed its purchase of Tractech Holdings, Inc. thereby eliminating competition between them. In the two years following the purchase, Tractech only offered one new Performance Differential product. Moreover, following its purchase of Tractech Holdings, Inc., Eaton imposed a significant price increase on the former Tractech Limited Slip Differential products such that the current suggested retail price for the Tractech

COMPLAINT- 5
Civil Action No.
RRPI-6-1001P01CMP

BLACK LOWE & GRAHAM PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

Limited Slip Differential product is either comparable to the Eaton Tractech Limited Slip Differential product or significantly higher. As the Eaton Limited Slip Differential product has replaceable parts, it is the Eaton branded product—and not the Tractech branded product—that would typically command a higher price in the market; Eaton's pricing strategy is thus unusual in the marketplace. As a result of its purchase, Eaton also acquired Tractech's competing line of Locking Differentials, the so-named "Detroit Electrac." Around the time of the acquisition, Eaton offered a line of Locking Differentials under the brand name "E-Locker". Almost immediately followin g the acquisition, Eaton raised the price on its own E-Locker line of Locking Differentials and announced it was eliminating the competing Tractech line of Locking Differentials, Detroit Electrac. The Detroit Electrac is no longer commercially available.

20.    As of 2004, RR&P was serving in the role as a non-exclusive distributor of Eaton's Performance Differentials. At one point, RR&P was unable to obtain a sufficient supply of Performance Differentials from Eaton for certain late model equipment. After several attempts to resolve the problem and meet the demand, RR&P finally advised Eaton that it intended to manufacture its own products. In connection with that effort, RR&P asked to acquire certain individual component parts from Eaton, with the intention that RR&P would use some of those parts in order to assemble competing differentials.

21.    Eaton responded to RR&P's request to purchase certain individual component parts by refusing to provide RR&P with the requested component parts, and further suspending the sale of any individual service components to RR&P.

22.    When this punishment proved to be an insufficient deterrent, Eaton threatened to cease selling any products to RR&P (including complete differential sets), unless RR&P discontinued plans to develop a competing product and guaranteed that RR&P would not be releasing competing products in the future. RR&P challenged Eaton's response, ultimately escalating the matter to Eaton's Chairman and CEO. RR&P continued with its design and development efforts.

BLACK LOWE & GRAHAM PLLC

COMPLAINT- 6
Civil Action No.
RRPI-6-1001P01CMP

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

23.     At the time of the introduction of its competing Yukon Products, RR&P estimates, based on RR&P sales, that Eaton had at least a clear majority of the Aftermarket Performance Differential Market, including more than 70 percent of the Automatic Locking Differentials Market.

24.     In January 2006, RR&P launched its Competing Yukon Products. The following is a listing of the Competing Yukon Products and the corresponding Eaton and Eaton Tractech products (the "Competing Products"):

| Automobile Manufacturer | RR&P (YUKON DURA GRIP®) | Eaton | Tractech (Now Eaton) |
|---|---|---|---|
| General Motors | YDGGM12P-3-30-1 | 19554 | TT913A555 |
| General Motors | YDGGM12P-4-30-1 | 19555 | TT913A315 |
| General Motors | YDGGM8.5-3-30-1 | 19559 | TT913A481 |
| Ford | YDGF8.8-28-1 | 19605 | TT912A562 |
| Ford | YDGF8.8-31-1 | 19588 | TT913A561 |
| General Motors | YDGGM8.5-3-28-1 | 19557 | TT912A556 |

25.     The introduction of the competing Yukon Products caught Eaton's attention, and immediately resulted in a new demand from Eaton that RR&P and all other distributors agree not to compete. Specifically, Eaton announced that "all authorized distributors of Eaton are required to enter into a written Distributor Agreement with Eaton." Eaton circulated a proposed "Distributor Agreement" that included a non-competition clause.

26.     The non-competition term was not previously required by Eaton from its distributors, and RR&P was advised that this provision would be added solely because RR&P was providing a competitive product in the market. In a transparent effort to avoid characterization as a restraint on competition, the Distributor Agreement was crafted to suggest an intent to protect intellectual property and prevent "copying." But the restrictive provision is much broader, preventing any development or sale of competitive products even if the corresponding Eaton product is not protected by any intellectual property rights.

BLACK LOWE & GRAHAM PLLC

COMPLAINT- 7
Civil Action No.
RRPI-6-1001P01CMP

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

27.     When RR&P refused to sign the agreement with its non-competition provisions, Eaton next proposed to allow RR&P to manufacture and distribute its current line of competing Yukon Products, but to preclude RR&P from introducing any additional competing products, some of which were then in development. The revised agreement stated:

> (c) Except as otherwise provided below, the Distributor shall not make, have made, use, sell or assist other party to make, have made, use or sell any Products for [equipment] that are copies of or based upon the designs of [Eaton's] products. This Agreement in no way grants or implies any commitment by Eaton to license or distribute the right to manufacture any of the Products or any other [Eaton] Products. Notwithstanding the foregoing, this Section shall not apply to, and Distributor shall be permitted to continue to make [the Yukon Competing Products].

28.     Eaton made it clear that it was seeking this agreement because of RR&P's status as a competitor and to prevent the introduction of any additional competing products. Thus, the provision is intended to reduce the number of new products that might be developed in order to compete with current Eaton products.

29.     When presenting the agreement to RR&P, Eaton further explained that all of its distributors would be required to sign the agreement with this same language. Upon information and belief, most or all of the other Eaton distributors signed agreements with Eaton containing the above excerpted language restricting the development or sale of competing products. As a result, neither RR&P nor any other companies who have developed competing differential products can distribute their products through outlets that carry Eaton products.

30.     In addition to restricting development or sale of competing goods, Eaton's distribution agreement would have prevented RR&P (and does prevent those other distributors who signed it) from not only manufacturing and distributing its own competitive products, but from assisting others to distribute or sell competitive products. Thus, the agreement seeks to impose an exclusive dealing-type arrangement on its distributors and, pursuant to this provision,

COMPLAINT- 8
Civil Action No.
RRPI-6-1001P01CMP

BLACK LOWE & GRAHAM ᴾˡˡᶜ
701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

RR&P—and Eaton's other distributors—would be forced to give up the right to develop and market other competing products.

31.     Other aspects of the proposed 2007 Distributor Agreement provide further evidence of Eaton's anticompetitive behavior. Eaton's pricing policies contained not only a volume discount but an Annual Growth Commitment and a "Share of Account Commitment" whereby available discounts are based in part upon the share Eaton's products bear to each Distributor's total inventory of all products competitive with Eaton. It further includes provisions that grant Eaton the right to audit each distributor's inventory of competitive products and require distributors to provide reports on competitors' activities.

32.     Thus, to the extent that Eaton's proposed 2007 Distributor Agreement allows distributors to carry any competing products, this new provision will force distributors to sell only Eaton products to the exclusion of other competing brands to stay competitive. Moreover, the proposed agreement contained express incentives which would organically solidify and entrench Eaton's dominance.

33.     Eaton required that, effective January 1, 2007, all authorized distributors of Eaton would be required to enter into a written Distributor Agreement with Eaton. Accordingly, at least as early as that date, not only were these restrictive agreements applicable to RR&P, but to every distributor in Performance Differential aftermarket. Effective January 1, 2007, RR&P would be foreclosed by an express contract from relationships with any distributor who did business with Eaton. Consequently, RR&P cannot sell its products to any distributors who also do business with Eaton.

34.     RR&P would not agree to sign the Eaton distributor agreement. As a result, Eaton refused to sell any further differential products to RR&P. At present, RR&P is able to sell Eaton-branded differential products, but only by purchasing them from other authorized distributors who have signed the Eaton distributor agreement. This arrangement places RR&P at a significant competitive disadvantage with respect to other distributors in that RR&P must incur additional

BLACK LOWE & GRAHAM ᴾᴸᴸᶜ
701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

1  distributor markup and freight charges by purchasing them through an intermediary, resulting in

2  lost profits to RR&P and impairing RR&P's ability to offer more competitive pricing to its

3  consumers.

4      35.    As recently as February 2009, Eaton again contacted RR&P and proposed to

5  allow RR&P to distribute Eaton's competing products if it agreed to sign its Distributor

6  Agreement. The language of the Distributor Agreement proposed at that time is substantially

7  identical to earlier versions, including the following terms:

8          The Distributor shall not make, have made, use, sell or assist any
9          other party to make, have made, use or sell any Products for trucks
           or automobiles that are copies of or based upon the designs of
10         Eaton's Products. This Agreement in no way grants or implies any
           commitment by Eaton to license to Distributor the right to
11         manufacture any of the Products or any other Eaton products.

12     36.    Other   aspects   of   the   2008   Distributor   Agreement   evidence   Eaton's

13  anticompetitive practices. Eaton included, in a section entitled "Marketing/Sales Goals; Incentive

14  Programs," language that indicated Eaton would "establish volume, loyalty, growth or other

15  sales, rebate or discount programs, which Eaton may elect to make available to Distributor."

16  Again, as with its earlier proposed Distributor Agreement, Eaton's recently proposed Distributor

17  Agreement contains incentives which will only lead to further market dominance.

18     37.    RR&P again refused to sign the agreement. RR&P is currently in the process of

19  developing additional products that will be competitive with Eaton's products, all to the benefit

20  of consumers. RR&P advised Eaton that it was developing such products, and forwarded to

21  Eaton drawings of such products to enable Eaton to evaluate them. If RR&P were to have signed

22  the Distributor Agreement, it would be prevented from further developing and selling its new

23  products that are currently being developed, causing further financial loss to RR&P and leading

24  to fewer competitive choices and higher prices for consumers, including those in Washington.

25     38.    A  relevant  antitrust  market  exists  in  the  United  States  for  aftermarket

26  Performance Differentials. Eaton's anticompetitive agreements (as described above) have created

BLACK LOWE & GRAHAM ᴾᴸᴸᶜ

COMPLAINT- 10
Civil Action No.
RRP1-6-1001P01CMP

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

significant barriers to entering the aftermarket differential market by substantially lessening the demand for competing aftermarket Performance Differentials, raising rival's costs and substantially reducing incentives and impairing the ability to innovate. The relevant geographic market is the United States.

39.    Eaton has acquired market power in the markets for Eaton's aftermarket Performance Differentials. For example, in 2005, Eaton acquired Tractech and thereby eliminated competition between them. As a result of this acquisition strategy, Eaton continued to cement its market dominance. Eaton subsequently merged Tractech into Eaton, dissolving Tractech and transferring all Tractech assets more directly to Eaton's ownership.

40.    Eaton has entered into distributor agreements with aftermarket Performance Differential distributors that exclude and substantially lessen competition in the market. Provisions within these agreements actually or effectively prohibit companies from competing against Eaton or dealing with any company that deals with Eaton, thereby substantially lessening competition in the Performance Differentials aftermarket.

41.    Eaton has demanded noncompetition terms from aftermarket Performance Differential distributors with the purpose and effect of unreasonably restraining trade in the markets for aftermarket Performance Differentials. For example, the agreements with aftermarket differential distributors that contain exclusive dealing provisions have substantially lessened, and will continue to substantially lessen, competition in the market for aftermarket Performance Differentials by excluding competitors and potential competitors of Eaton, including RR&P. Eaton's anticompetitive agreements with aftermarket differential distributors create, re-enforce, and entrench Eaton's market power in the aftermarket differential market.

42.    RR&P is a competitor in the market. RR&P has been, and continues to be, harmed as a direct consequence of Eaton's unlawful agreements, acts and course of conduct.

43.    Eaton has continued to perpetuate and re-enforce its substantial market power in the markets for aftermarket Performance Differentials. As recently as February 2009, Eaton has

BLACK LOWE & GRAHAM ᴾᴸᴸᶜ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

1    reiterated its requirement that RR&P sign an agreement containing unlawful anticompetitive

2    terms in order to gain the supply and pricing benefits of a distributor.

3                              **FIRST CAUSE OF ACTION**
                   **(Combination and Conspiracy to Restrain Trade in Violation of**
4                              **Section 1 of the Sherman Act)**

5         44.    RR&P re-alleges and incorporates by reference the facts and allegations of the

6    paragraphs above.

7         45.    Eaton has entered into contracts or conspiracies with aftermarket Performance

8    Differential distribution companies that unreasonably restrain trade and interstate commerce in

9    the markets for aftermarket Performance Differentials. Eaton has continued to engage in a

10   continuing combination and conspiracy to restrain competition in the relevant markets, in

11   violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Eaton has entered into distributor

12   agreements with aftermarket Performance Differentials distribution companies that contain

13   unlawful exclusive dealing provisions, as well as volume, loyalty, growth or other sales, rebate

14   or discount programs, with the purpose of substantially lessening competition in the markets for

15   aftermarket Performance Differentials. Eaton has also asked that RR&P enter into an

16   anticompetitive distribution agreement that would allow RR&P to purchase Eaton's aftermarket

17   Performance Differentials at the same price as its other distributors, but only if RR&P agrees to

18   not manufacture or distribute competing Performance Differentials. RR&P has refused to enter

19   into such an agreement.

20        46.    Eaton's contracts and conspiracies have resulted in substantial anticompetitive

21   effects in the differential aftermarket and thereby unreasonably restrained trade and interfered

22   with otherwise ordinary, usual and freely competitive markets in interstate commerce. For

23   example, Eaton's agreements with aftermarket Performance Differential distributors that contain

24   its exclusive dealing provisions, as well as volume, loyalty, growth or other sales, rebate or

25   discount programs, substantially lessen present and future competition in the Performance

26   Differential aftermarket by mandating that distributors distribute only Eaton's Performance

BLACK LOWE & GRAHAM ᴾᴸᴸᶜ
701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

Differentials, effectively cutting off distribution channels for other Performance Differential manufacturers. By substantially lessening competition and foreclosing business opportunities in the Performance Differential aftermarket, Eaton substantially reduces the financial incentives of Performance Differential manufacturers to innovate, which results in reduced product differentiation, product quality and consumer choices.

47.     Eaton's contracts, combinations and conspiracies have no legitimate business justification or pro-competitive benefits that outweigh the negative impact on competition in the relevant markets.

48.     As a direct and proximate result of Eaton's violations of Section 1 of the Sherman Act, RR&P has been substantially injured in its business or property. For example, Eaton's distributor agreements with aftermarket Performance Differential distributors have substantially lessened present and future business opportunities for RR&P because the terms of the distributor agreements preclude distributors from carrying RR&P's aftermarket Performance Differentials. RR&P also has been injured in that it must pay additional premiums in markups and freight to third party distributors in order to obtain Eaton products for resale, resulting in financial loss to RR&P and higher prices to consumers. Eaton's distributor agreements have also deterred innovation in the Performance Differential market, which has thereby injured RR&P in its capacity as a distributor of aftermarket Performance Differentials.

### SECOND CAUSE OF ACTION
### (Monopolization of Aftermarket Differential Market in Violation of Section 2 of the Sherman Act)

49.     RR&P re-alleges and incorporates by reference the facts and allegations of the paragraphs above.

50.     Eaton possesses monopoly power in the Performance Differential aftermarket. Eaton has used, and continues to use, its distributor agreements to restrain the sale and use of aftermarket Performance Differentials.

BLACK LOWE & GRAHAM PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

51.     Eaton has used its anticompetitive agreements with aftermarket Performance Differential distributors to substantially lessen competition and acquire power in the Performance Differential aftermarket. Eaton's ability to exclude competition in the Performance Differential aftermarket demonstrates Eaton's monopoly power in the Performance Differential aftermarket.

52.     Eaton has willfully acquired and maintained monopoly power in the aftermarket Performance Differential by anticompetitive means, and has used that monopoly power for exclusionary purposes, rather than as a consequence of a superior product, superior business sense or historic accident. For example, Eaton's distributor agreements with Performance Differential aftermarket distributors contain exclusivity provisions that substantially lessen competition for Eaton, thereby substantially and unreasonably lessening the demand for competing aftermarket Performance Differentials. Eaton's distributor agreements unreasonably lessen the financial incentives to innovate and thus substantially lessen competition in the Performance Differential aftermarket. In addition, Eaton has purchased competing companies and thereafter amended offerings and pricing, leading to less competition and enhancing Eaton's monopoly position.

53.     Eaton's request that RR&P enter into its distributor agreements so that RR&P may purchase Eaton's aftermarket Performance Differentials furthers Eaton's monopoly power by forcing RR&P to choose between either (i) entering into a license that would preclude RR&P from manufacturing and distributing its own aftermarket Performance Differentials; or (ii) foregoing the right to distribute Eaton's aftermarket Performance Differentials, which undermines RR&P's ability to expand its product offering and deters customers from choosing RR&P because RR&P could not offer the inventory of the market leader. Either alternative decreases RR&P's revenues and reinforces and entrenches Eaton's monopoly.

COMPLAINT- 14
Civil Action No.
RRPI-6-1001P01CMP

BLACK LOWE & GRAHAM PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

54.    Likewise, Eaton's refusal to sell to RR&P in the absence of an anti-competitive agreement between Eaton and RR&P is an improper use of Eaton's monopoly power, causing damage to RR&P.

55.    Eaton's exclusionary and anticompetitive agreements practices are not warranted by legitimate business justifications or pro-competitive benefits.

56.    Eaton's monopolization of the Performance Differential aftermarket has violated and continues to violate the Sherman Act, 15 U.S.C. § 2. As a direct and proximate result of Eaton's violations of Section 2 of the Sherman Act, RR&P has been substantially injured in its business or property. For example, Eaton's monopolization of the aftermarket Performance Differential has reduced the demand for RR&P's aftermarket Performance Differentials by, among other things, significantly reducing the number of outlets through which RR&P may sell its competing products and causing RR&P to incur higher prices in its effort to sell Eaton products. Eaton's monopolization has also reduced innovation for aftermarket Performance Differentials, thereby reducing the quantity and quality of aftermarket Performance Differentials for RR&P's distribution.

### THIRD CAUSE OF ACTION
### (Attempt to Monopolize in Violation of Section 2 of the Sherman Act)

57.    RR&P re-alleges and incorporates by reference the facts and allegations of the paragraphs above.

58.    In violation the Sherman Act, 15 U.S.C. § 2, Eaton has willfully, knowingly, intentionally and with the specific intent to do so, attempted to monopolize the Performance Differential aftermarket. Eaton has acted with the purpose and conscious objective of acquiring the power to control prices and exclude competition.

59.    Eaton has engaged in overt exclusionary and predatory acts in furtherance of its specific intent to monopolize the Performance Differential aftermarket. For example, Eaton has entered into distributor agreements with Performance Differential distributors that contain

BLACK LOWE & GRAHAM <sup>PLLC</sup>

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

unlawful exclusive dealing provisions, as well as volume, loyalty, growth or other sales, rebate or discount programs. Eaton's distributor agreements substantially lessen competition for aftermarket Performance Differentials by precluding distributors from distributing Performance Differentials other than those originating with Eaton, thereby substantially and unreasonably lessening competition in the Performance Differential aftermarket by reducing the quantity and quality of aftermarket Performance Differentials. Eaton's distributor agreements substantially reduce the financial incentives to innovate, and thus substantially and unreasonably lessen competition in the Performance Differential aftermarket. Eaton's request that RR&P enter into its distributor agreements so that RR&P may purchase Eaton's aftermarket Performance Differentials furthers Eaton's attempts to monopolize by forcing RR&P to choose between either: (i) entering into a license that would preclude RR&P from manufacturing its own aftermarket Performance Differentials; or (ii) foregoing the right to distribute Eaton aftermarket Performance Differentials, which undermines RR&P's ability to expand its product offering and deters customers from choosing RR&P because it does not offer the inventory of the market leader. Either alternative decreases RR&P's revenues and reinforces and entrenches Eaton's monopoly.

60.     Eaton's exclusionary and predatory acts are not legitimate and have a reasonably foreseeable effect of disciplining and weakening competition so that Eaton can obtain monopoly power in the technology market.

61.     If Eaton does not already have monopoly power in the Performance Differential aftermarket, there is a dangerous probability that Eaton, by its exclusionary and predatory conduct, will succeed in obtaining monopoly power in the Performance Differential aftermarket. Eaton's exclusionary and predatory distributor agreements create significant barriers to entering the Performance Differential aftermarket, substantially raise rivals' costs, substantially lessen product differentiation, and demand for differentiated technology, and have the effect of excluding competing Performance Differential technologies. As a result, Eaton has excluded

BLACK LOWE & GRAHAM PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

competition in the markets for aftermarket Performance Differential technology such that there is a dangerous probability that Eaton will succeed in obtaining monopoly power in the Performance Differential aftermarket (if it has not done so already).

62.     Eaton's predatory and exclusionary conduct is not warranted by legitimate business justifications or pro-competitive benefits.

63.     As a direct and proximate result of defendants' violations of Section 2 of the Sherman Act, RR&P has been substantially injured in its business or property. For example, Eaton's attempted monopolization of the Performance Differential aftermarket has raised RR&Ps costs and substantially lessened present and future business opportunities for RR&P's aftermarket Performance Differentials. In addition, Eaton's attempted monopolization of the Performance Differential aftermarket has raised RR&Ps cost to compete in that market and reduced innovation for aftermarket Performance Differentials, thereby reducing the quantity and quality of aftermarket Performance Differentials for RR&P's distribution.

**FOURTH CAUSE OF ACTION**
**(Exclusive Dealing in Violation of Section 3 of the Clayton Act)**

64.     RR&P re-alleges and incorporates by reference the facts and allegations of the paragraphs above.

65.     Eaton has entered into distributor agreements with aftermarket Performance Differential distributors on  the condition, agreement or understanding that the purchaser or licensee would not deal in the aftermarket Performance Differential of competitors of Eaton. For example, Eaton has entered into long-term agreements with aftermarket Performance Differential distributors that contain unlawful exclusive dealing provisions, as well as volume, loyalty, growth or other sales rebate or discount programs that substantially lessen competition in the market by excluding competing aftermarket Performance Differentials.

66.     The effect of Eaton's distributor agreements is to substantially lessen competition or tend to create a monopoly in the Performance Differential aftermarket. For example the

BLACK LOWE & GRAHAM ᴾᴸᴸᶜ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

exclusive dealing provisions in Eaton's distributor agreements exclude the distributors from: making, having made, using, selling or assisting any third-party make, have made, use or sell any aftermarket Performance Differential for trucks or automobiles that are copies of or based upon the designs of Eaton's Products. This prohibition actually or effectively prevents aftermarket Performance Differential distributors from dealing in non-Eaton aftermarket Performance Differentials. This has the effect of substantially lessening competition or tending to create a monopoly in the Performance Differential aftermarket. The exclusive dealing provisions in Eaton's distributor agreements also have the effect of reducing demand for new aftermarket Performance Differential innovation, thus substantially lessening competition or tending to create a monopoly in the Performance Differential aftermarket.

67.     Eaton has violated and continues to violate Section 3 of the Clayton Act, 15 U.S.C. § 14. RR&P has been injured, and continues to be injured, as a proximate result of Eaton's conduct. For example, Eaton's conducts has, and continues to, raise RR&P's costs and substantially forecloses RR&P's present and future business opportunities.

### FIFTH CAUSE OF ACTION
### (Unfair Competition in Violation of RCW 19.86.020)

68.     RR&P re-alleges and incorporates by reference the facts and allegations of the paragraphs above.

69.     Eaton's conduct as alleged herein constitutes unfair competition in the conduct of trade or commerce that affects, directly or indirectly, the people of the State of Washington and impacts the public interest in violation of RCW 19.86.020. For example, Eaton's conduct has monopolized or attempted to monopolize the Performance Differential aftermarket, substantially lessened competition in the Performance Differential aftermarket, substantially raised rivals' costs, created barriers to entry, and lessened consumer choice.

70.     As a direct and proximate result of Eaton's illegal acts, and/or because RR&P refused to accede to a proposal for an arrangement which, if consummated, would be in violation

BLACK LOWE & GRAHAM PLLC

COMPLAINT- 18
Civil Action No.
RRPI-6-1001P01CMP

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

of unfair business practices, RR&P has been substantially injured in its business or property as alleged herein.

### SIXTH CAUSE OF ACTION
### (Combination and Conspiracy to Restrain Trade in Violation of RCW 19.86.030)

71.    RR&P re-alleges and incorporates by reference the facts and allegations of the paragraphs above.

72.    In violation of RCW 19.86.030, as alleged herein, Eaton has entered into contracts, combinations, and/or conspiracies with aftermarket Performance Differential distributors that unreasonably restrain trade and commerce in the Performance Differentials aftermarket, and which directly or indirectly affect the people or the State of Washington. For example, Eaton has entered into unlawful distributor agreements with companies who do business in the State of Washington. Certain aftermarket Performance Differentials are also sold by Eaton under unlawful agreements signed by aftermarket Performance Differential distributors who do business in the State of Washington, and the aftermarket Performance Differentials are used by consumers in the State of Washington. Eaton also demanded that RR&P enter into an unlawful agreements agreement to distribute aftermarket Performance Differentials in the State of Washington.

73.    Eaton's contracts, combinations and conspiracies have no legitimate business justification or pro-competitive benefits that outweigh the negative impact on competition in the relevant markets.

74.    Eaton also has used and continues to use its market power to demand that RR&P enter into an unlawful distribution agreement. For example, Eaton's request that RR&P enter into Eaton's distributor agreements so that RR&P may purchase Eaton's aftermarket Performance Differentials furthers Eaton's monopoly power by forcing RR&P to choose between either (i) entering into a license that would preclude RR&P from manufacturing its own aftermarket Performance Differentials; or (ii) foregoing the right to distribute Eaton aftermarket

COMPLAINT- 19
Civil Action No.
RRPI-6-1001P01CMP

BLACK LOWE & GRAHAM ᴾᴸᴸᶜ
701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

Performance Differentials, which undermines RR&P's ability to expand its product offering and deters customers from choosing RR&P because it does not offer the inventory of the market leader. Either alternative decreases RR&P's revenue and reinforces and entrenches Eaton's monopoly. This agreement, if consummated, would not be justified by any legitimate pro-competitive benefit and would constitute a contract, combination or conspiracy that unreasonably restrains trade and commerce in violation of RCW 19.86.030.

75.    As a direct and proximate result of Eaton's illegal acts, and/or because RR&P refused to accede to a proposal for an arrangement which, if consummated, would be in violation of unfair business practices, RR&P has been substantially injured in its business or property as alleged herein.

## SEVENTH CAUSE OF ACTION
### (Monopolization of Eaton Technology Market in Violation of RCW 19.86.040)

76.    RR&P re-alleges and incorporates by reference the facts and allegations of the paragraphs above.

77.    Eaton possesses monopoly power in the aftermarket Performance Differential.

78.    Eaton, by the conduct alleged herein, has willfully acquired and maintained monopoly power in the aftermarket Performance Differential by exclusionary and anticompetitive means and used it for exclusionary purposes, rather than as a consequence of a superior product, superior business sense, or historic accident.

79.    Eaton's exclusionary and anticompetitive conduct is not warranted by legitimate business justifications or pro-competitive benefits.

80.    Eaton's conduct as alleged herein constitutes monopolization of and commerce in the Performance Differential aftermarket which directly or indirectly affects the people of the State of Washington in violation of RCW 19.86.040.

81.    As a direct and proximate result of Eaton's illegal acts, and/or because RR&P refused to accede to a proposal for an arrangement which, if consummated, would be in violation

COMPLAINT- 20
Civil Action No.
RRPI-6-1001P01CMP

BLACK LOWE & GRAHAM ᴾᴸᴸᶜ
701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

of unfair business practices, RR&P has been substantially injured in its business or property as alleged herein.

## EIGHTH CAUSE OF ACTION
### (Attempt to Monopolize Eaton Technology Market and Eaton Market in Violation of RCW 19.86.040)

82.    RR&P re-alleges and incorporates by reference the facts and allegations of the paragraphs above.

83.    Eaton has willfully, knowingly, intentionally and with the specific intent to do so, attempted to monopolize the Performance Differential aftermarket. Eaton has acted with the purpose and conscious objective of acquiring the power to control prices and exclude competition in the Performance Differential aftermarket.

84.    Eaton has engaged in overt exclusionary and predatory acts in furtherance of its specific intent to monopolize the Performance Differential aftermarket as alleged herein.

85.    If Eaton does not already have monopoly power in the aftermarket Performance Differential, there is a dangerous probability that Eaton, by its exclusionary and predatory conduct, will succeed in obtaining monopoly power in the Performance Differential aftermarket.

86.    Eaton's predatory and exclusionary conduct is not warranted by legitimate business justifications or pro-competitive benefits.

87.    Eaton's conduct as alleged herein constitutes an attempt to monopolize trade and commerce in the Performance Differential aftermarket which directly or indirectly affects the people of the State of Washington in violation of RCW 19.86.040.

88.    As a direct and proximate result of Eaton's illegal acts, and/or because RR&P refused to accede to a proposal for an arrangement which, if consummated, would be in violation of unfair business practices, RR&P has been substantially injured in its business or property as alleged herein.

BLACK LOWE & GRAHAM ᴾᴸᴸᶜ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

### NINTH CAUSE OF ACTION
### (Exclusive Dealing in Violation of RCW 19.86.050)

89.     RR&P re-alleges and incorporates by reference the facts and allegations of the paragraphs above.

90.     Eaton has entered into distributor agreements with aftermarket Performance Differential distributors on the condition, agreement or understanding that the distributors would not deal with the competitors of Eaton, as alleged herein.

91.     The effect of Eaton's distribution agreements is to substantially lessen competition or tend to create a monopoly in Performance Differential aftermarket which affects, directly or indirectly, the people of the State of Washington in violation of RCW 19.86.050, as alleged herein.

92.     As a direct and proximate result of Eaton's illegal acts, and/or because RR&P refused to accede to a proposal for an arrangement which, if consummated, would be in violation of unfair business practices, RR&P has been substantially injured in its business or property as alleged herein.

### TENTH CAUSE OF ACTION
### (Declaratory Judgment of Patent Noninfringement)

93.     RR&P re-alleges and incorporates by reference the facts and allegations of the paragraphs above.

94.     Eaton is the owner of US Patent No. 5,885,181 for a Helical Gear Differential Including Lubrication Passage Means. Eaton acquired the patent in its acquisition and subsequent merger of Tractech, Inc.

95.     During communications between Eaton and RR&P, RR&P presented designs for differential products that it has developed and intends to sell imminently. Eaton asserted that those products will infringe the '181 patent when sold by RR&P.

96.     RR&P believes that no differential products designed by RR&P infringe any patents owned or controlled by Eaton, including the '181 patent.

BLACK LOWE & GRAHAM PLLC

COMPLAINT- 22
Civil Action No.
RRPI-6-1001P01CMP

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

97.     Accordingly, a case of actual controversy exists among the parties concerning whether any RR&P differential products infringe any patent owned or controlled by Eaton.

98.     No RR&P products or product designs infringe any patents owned or controlled by Eaton.

99.     Because the RR&P products do not infringe any patents owned by Eaton, RR&P is entitled to a declaration of noninfringement of any such patents, including the '181 patent.

### PRAYER FOR RELIEF

WHEREFORE, RR&P requests the following relief against Eaton:

1.     Enjoin Eaton from continuing to violate Sections 1 and 2 of the Sherman Act and Section 3 of the Clayton Act, pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26 by, at a minimum, voiding all terms in all distributor agreements containing anti-competitive conditions, requiring Eaton to sell products to RR&P without anti-competitive conditions, ordering Eaton to specifically encourage its distributors to sell competing goods, and such other terms as are just and proper to cure the damages incurred;

2.     Enjoin Eaton from violation of the laws of the State of Washington, RCW 19.86.020, 030, 040, 050, 090 by, at a minimum, voiding all terms in all distributor agreements containing anti-competitive conditions, requiring Eaton to sell products to RR&P without anti-competitive conditions, ordering Eaton to specifically encourage its distributors to sell competing goods, and such other terms as are just and proper to cure the damages incurred;

3.     Award RR&P the damages it has sustained in an amount to be proved at trial, to be trebled according to law, plus attorneys' fees, costs, prejudgment interest, post-judgment interest, and any other relief allowed by law;

4.     Enter a declaration that RR&P has not infringed the '181 patent or any other patent owned or controlled by Eaton; and

5.     Such other and further relief as the Court may deem just and proper.

BLACK LOWE & GRAHAM PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

1

2

**JURY DEMAND**

3

RR&P demands a jury trial.

4

5

DATED this 7th day of May 2009.

6

7

BLACK LOWE & GRAHAM PLLC

8

9

Lawrence D. Graham, WSBA No. 25,402
    Email: graham@blacklaw.com

10

Douglas A. Grady, WSBA No. 36,100
    Email: grady@blacklaw.com

11

701 Fifth Avenue, Suite 4800

12

Seattle, WA 98104

13

T: 206.381.3300
F: 206.381.3301

14

15

Attorneys for Plaintiff Randy's Ring & Pinion
Service Inc.

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT- 24
Civil Action No.
RRPI-6-1001P01CMP

BLACK LOWE & GRAHAM PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301